TRISTEN GROSS,

       Plaintiff,

v.                   1:16-CV-0723
                      (CFH)
COMM'R OF SOC. SEC.,

       Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF STEVEN R. DOLSON<br>Counsel for Plaintiff<br>126 North Salina Street, Suite 3B<br>Syracuse, New York 13202 | STEVEN R. DOLSON, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL - REGION II<br>Counsel for Defendant<br>26 Federal Plaza, Room 3904<br>New York, New York 10278 | MONIKA K. CRAWFORD, ESQ. |

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

    Currently before the Court, in this Social Security action filed by Tristen Gross ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3, are Plaintiff Tristen Gross' motion for judgment on the pleadings and Defendant Commissioner's motion for judgment on the pleadings. (Dkt. Nos. 9, 13.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1987, making him 24 years old at the alleged onset date and 27 years old at the date of the ALJ's decision. Plaintiff reported earning an Individualized Education Plan ("IEP") high school diploma with involvement in special education, and the ALJ found he did not have past relevant work. Generally, Plaintiff alleges disability consisting of depression, mood swings, bipolar disorder, anger issues, a learning disorder, asthma, and left foot problems.

### B. Procedural History

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on August 9, 2012, alleging disability beginning February 29, 2011. T at 13.[1] Plaintiff's application was initially denied on December 10, 2012, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 87, 95). Plaintiff appeared at a hearing before ALJ Michelle S. Marcus on May 20, 2014. (*Id.* at 45- 84). On September 2, 2014, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (*Id.* at 13-26.) On May 27, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-3.)

### C. The ALJ's Decision

Generally, the ALJ made the following findings of fact and conclusions of law. (T. 13-26.) First, the ALJ found that Plaintiff was insured for benefits under Title II of the Social Security Act until June 30, 2011. (*Id.* at 15.) Second, the ALJ found that Plaintiff has not

---

[1] The Administrative Transcript is found at Dkt. No. 7. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

2

engaged in substantial gainful activity since February 28, 2011. (*Id.* at 15.) Third, the ALJ found that Plaintiff's migraine headaches, generalized seizure disorder, anemia, asthma, mood disorder and intellectual disorder are severe impairments, while his foot and back pain are not severe impairments. (*Id.* at 15-16.) Fourth, the ALJ determined that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (*Id.* at 17-20.) More specifically, the ALJ considered Listing 3.03 (asthma), 7.02 (chronic anemia), 11.02 (convulsive epilepsy), 11.03 (non-convulsive epilepsy), 12.02 (cognitive disorders) 12.04 (mood disorders), and 12.05 (intellectual disability). (*Id.*) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except that the claimant is precluded from climbing ladders, ropes, or scaffolds, exposure to loud noise, working from unprotected heights or around moving mechanical parts, or driving; he should avoid concentrated exposure to respiratory irritants; he can perform unskilled work; he is able to interact appropriately with coworkers and tolerate changes in the work environment commensurate with unskilled work.

(*Id.* at 20.) Sixth, the ALJ found that Plaintiff has no past relevant work. (*Id.* at 25.) Seventh, the ALJ determined at step five, pursuant to the Medical-Vocational Guidelines, that Plaintiff is not disabled because his additional non-exertional limitations have little-to-no impact on the occupational base of medium work. (*Id.* at 25-26.)

### D.    Arguments

Generally, Plaintiff argues that the ALJ failed to assess properly Plaintiff's impairments under Listing 12.05 for intellectual disability. (Dkt. No. 9, at 3-8 [Pl. Mem. of Law].) Plaintiff argues that the ALJ improperly assessed the consultative examiners' opinions insofar as she (1) discounted the IQ scores Dr. Hartman provided, and (2) was improperly selective in her reliance on certain testimony in the record. (Dkt. No. 9, at 6-7 (Pl. Mem. of Law].) Plaintiff also

3

argues that the ALJ failed to meet her duty to develop the record by declining to obtain Plaintiff's educational records, a duty made more significant due to plaintiff's lack of representation at the hearing. (Dkt. No. 9, at 5 [Pl. Mem. of Law].) Lastly, Plaintiff asserts that the ALJ should have concluded that he met either Listing 12.05B or 12.05C. (*Id.* at 7-8.)

Generally, Defendant argues that substantial evidence supports the ALJ's finding that Plaintiff's mental disability does not meet or equal the requirements of Listing 12.05. (Dkt. No. 13, at 16-17 [Def. Mem. of Law].) More specifically, Defendant argues that the ALJ did not err in finding the low IQ scores to be unreliable, and, even if the ALJ had given weight to the IQ scores, the ALJ reasonably found that Plaintiff did not display the requisite deficits in adaptive functioning required to meet any subsection of Listing 12.05. (*Id.*) Defendant further argues that the ALJ had no duty to obtain Plaintiff's education records, noting that, although Plaintiff was unrepresented, he had obtained counsel shortly after the ALJ's decision was rendered, the representative did not obtain such records to submit to the Appeals Council nor raise the issue when appealing to the Appeals Council. (*Id.* at 14-15.)

## II.     RELEVANT LEGAL STANDARDS

### A.     Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere

scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

### B. Sequential Evaluation

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step sequential evaluation proceeds as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability

5

> to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Schweiker*, 675 F.2d at 467, *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

The Court concludes that the ALJ's finding that Plaintiff failed to demonstrate that his mental disability met or equaled Listing 12.05 is supported by substantial evidence and consistent with the applicable legal standards. In so finding, the Court adopts the reasons stated in Defendant's memorandum of law. (Def. Mem. of Law at 14-17.) The Court adds the following additional analysis.

A plaintiff will be found disabled if the individual has an impairment or combination of impairments that meets or equals one of the Listings, and meets the duration requirement. 20 C.F.R. §§ 404.1520(d), 416.920(d). The burden is on the plaintiff to present medical findings that his or her impairments match a Listing or are equal in severity to a Listing. *Davis v. Astrue,*

6

6:09-CV-0186, 2010 WL 2545961, at *3 (N.D.N.Y. June 3, 2010). A plaintiff must show that his or her impairment meets or equals *all* of the specified medical criteria. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (superseded by statute on other grounds). If a plaintiff's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Id.* Additionally, while an ALJ "should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment," the absence of an express rationale for an ALJ's conclusions does not prevent a court from upholding them so long as we are "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Berry,* 675 F.2d at 469.

To meet Listing 12.05, Plaintiff must show that he meets or medically equals the following criteria:

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

7

> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. § 404, Subpart P, App. 1, § 12.05 (2014).

To meet any of the sub-sections of Listing 12.05, a claimant must show that he not only meets the specific requirements of a certain sub-section, but also that he satisfies the diagnostic description of intellectual disability included in the introductory paragraph of Listing 12.05, namely subaverage general intellectual functioning with deficits in adaptive functioning manifested prior to the age of 22. *See Manni v. Colvin*, No. 15-CV-1140, 2017 WL 1066667, at *3 (N.D.N.Y. Mar. 20, 2017) (quoting *Brothers v. Colvin*, No. 7:16-CV-0100, 2017 WL 530525, at *6 (N.D.N.Y. Feb. 9, 2017)).

The ALJ found that Plaintiff did not meet Listing 12.05, indicating that the IQ scores obtained through testing did not appear to validly assess his intellectual functioning. (T. at 19). Further, the ALJ concluded that Plaintiff did not display any marked limitations in the required functional areas or episodes of decompensation of extended duration. (*Id.* at 18). Finally, the ALJ determined that Plaintiff's reported daily activities did not show the requisite deficits in adaptive functioning necessarily to satisfy the diagnostic description in the introductory paragraph of Listing 12.05. (*Id.* at 18-20).

Plaintiff spends the majority of his brief arguing that the ALJ erred in finding Plaintiff's assessed IQ scores to be invalid. *See* generally Dkt. No. 9. However, this Court need not decide whether the ALJ's decision to reject these IQ scores was reasonable and supported by substantial

8

evidence because it concludes that there is substantial evidence to support the ALJ's finding that Plaintiff did not demonstrate the deficits in adaptive functioning required to meet Listing 12.05. The Agency does not specifically define what constitutes deficits in adaptive functioning; however, this Court has noted that considerations include "living on one's own, independently caring for children, cooking, paying bills, communication abilities, and daily living skills as indications of deficits in adaptive functioning." *Stephens v. Colvin*, 200 F. Supp. 3d 349, 359 (N.D.N.Y. 2016) (citing *Barton v. Astrue*, No. 3:08-CV-0810, 2009 WL 5067526, at *7 (N.D.N.Y. Dec. 16, 2009)).

In determining that Plaintiff had only a mild restriction in activities of daily living, the ALJ noted Plaintiff's reports to various sources which indicated that he was able to tend to his personal care, cook, clean, shop, and do laundry, but she acknowledged that plaintiff also reported being scared to drive and having some difficulty managing money. (T. 17.) The ALJ observed that Plaintiff had "spent more than two years in college pursuing a degree in computer technology for video games and 3D animation" and stopped his schooling not due to cognitive difficulties but because of stress related to his daughter's foster care placement. (*Id.* at 19.) The ALJ specifically indicated that "claimant's ability to maintain his [activities of daily living], play basketball with others and attend to college courses" showed that the requisite deficits in adaptive functioning were absent. (*Id.* at 20.)

Substantial evidence supports the ALJ's conclusion regarding the absence of deficits in Plaintiff's adaptive functioning. Plaintiff's apparent limitations in his education and work show are countered by the fact that he ended those opportunities for reasons other than his intellectual limitations. For instance, although Plaintiff reported, somewhat ambiguously, that he did not obtain his CNA certificate because he "couldn't focus" because he had "too much work," he

testified that he passed the basic skills test toward his certificate. (T. 64-66.) Further, Plaintiff testified that he left his job at Taco Bell, which he testified he performed for almost a year, due to an injury to his foot, not due to difficulties performing the tasks required because of his intellectual impairment. (*Id.* at 67, 284, 358.) In addition, plaintiff testified he was in the process of seeking custody rights for his daughter, suggesting his intellectual impairment would not keep him from performing child care tasks. (*Id.* at 80-81.) Notably, when asked by the ALJ why he was unable to work, Plaintiff testified that his inability as because of his seizures, depression, migraines, and balance issues, not his intellectual impairment. (*Id.* at 72.)

The medical evidence in the record also supports the ALJ's determination that plaintiff did not meet Listing 12.05. In December 2009, consultative examiner Kerry Brand, Ph.D., noted that Plaintiff reported being able to dress, groom himself, cook, prepare food, do general cleaning and laundry, grocery shop with his mother, take public transportation independently, and play basketball, though he reported he did not manage money, drive, or spend time with friends. (T. 361.) In May 2012, consultative examiner David Mahony, Ph.D., noted that Plaintiff reported being able to dress, bathe, groom, cook, clean, shop, do laundry, and socialize with friends. (*Id.* at 406.) In November 2012, consultative examiner Brett Hartman, Psy.D. indicated that Plaintiff reported living alone and that he had graduated from high school with an IEP diploma. (*Id.* at 237). Further, Plaintiff told the examiner that he was able to dress, bathe, groom, cook, clean, do laundry, shop with his sister, see his daughter regularly, play video games, and submit job applications, but did not drive because he was too scared. (*Id.* at 239-40.)

On April 25, 2013, Plaintiff told a mental health provider that he was living in his own apartment, though his brother was staying with him at that time for undisclosed reasons. (T. 308.) On most of plaintiff's treatment notes wherein he underwent mental status examinations,

Plaintiff was observed as having intact attention and concentration. (*See e.g.*, T. at 202, 204, 207, 213, 216, 290, 298, 308, 318, 326-27, 336, 346, 385, 435, 439, 693, 852.) In September 2012, an interviewer at the Disability Determination Service's office noted that Plaintiff answered all questions posed without difficulty and otherwise had no noticeable difficulties throughout the interview. (*Id.* at 158.) The record shows that Plaintiff was also able to seek care at the emergency room and from other sources for various ailments and that he voluntarily admitted himself to the hospital in August 2011 due to depression and anxiety, actions which provide further support for the finding that Plaintiff is able to care for his own health needs.

Substantial evidence supports the ALJ's finding that Plaintiff did not display the deficits in adaptive functioning required to meet the introductory criteria for Listing 12.05. This is determinative, as Plaintiff is required to show that he meets all the criteria of both the introductory paragraph and one sub-section of Listing 12.05 in order to merit a finding that he is medically disabled. 20 C.F.R. § 404, Subt. P, App. 1, § 12.05 (2014). Plaintiff's low IQ scores, even if they were deemed valid, are not sufficient on their own to necessitate a finding that he meets Listing 12.05 or is otherwise disabled. Regardless whether Plaintiff's IQ was as low as assessed by the tests issued by Dr. Brand and Dr. Hartman, no medical source opined that Plaintiff's low IQ or other mental impairments imposed disabling functional restrictions.[2] Rather, Dr. Brand opined that Plaintiff could understand and follow simple instructions and

---

[2] Dr. Hartman did check a box in his intelligence testing form from January 2013 indicating that Plaintiff was permanently disabled due to limited intelligence. (T. 288.). However, whether a claimant is disabled is an issue reserved to the Commissioner, and, thus, is not entitled to special deference when stated by a medical provider. *See Mortise v. Astrue,* 713 F. Supp. 2d 111, 125 (N.D.N.Y. 2010) ("[A]n opinion concerning the ultimate issue of disability, from any source, is reserved to the commissioner."); *Fuimo v. Colvin*, 948 F. Supp. 2d 260, 267 (N.D.N.Y. 2013) (noting that it was proper for the ALJ to give little weight to an opinion that the plaintiff was severely disabled and not competitively employable because that concerned an issue reserved to the Commissioner) (citing 20 C.F.R. § 416.927(d)(1)). Further, this statement conflicts with his functional opinions from less than two months earlier and on the same date that indicated no more than moderate limitations in any area of functioning. (T. 240, 287.).

directions; would have moderate difficulty maintaining attention, concentration and a regular schedule, making appropriate decisions, relating adequately with others and dealing appropriately with stress; and would have moderate-to-severe difficulties learning new tasks and performing complex tasks. (T. 361.) Dr. Mahony concluded that Plaintiff could follow and understand simple directions and instructions, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress; but that he had mild difficulties maintaining attention, concentration and a regular schedule; and moderate difficulties learning new tasks. (*Id.* at 406.) In November 2012, Dr. Hartman opined Plaintiff could follow and understand simple directions; had mild difficulty maintaining attention and concentration or a regular schedule and making appropriate decisions; and had moderate difficulty learning new tasks, relating adequately with others, and dealing appropriately with normal life stressors. (*Id.* at 240.) In January 2013, Dr. Hartman opined that Plaintiff was very limited in his ability to perform complex tasks; moderately limited in his abilities to maintain attention and concentration for rote tasks and use public transportation; and had no limitations in following, understanding and remembering simple instructions and directions, attending a routine and maintaining a schedule, and maintaining basic standards of hygiene and grooming. (*Id.* at 287.) The two non-examining State Agency psychological consultants also opined no more than moderate limitations. (*Id.* at 262-64, 408-10.) Additionally, Plaintiff had worked in the past and never indicated his intellectual functioning prevented him from adequately performing that job. *See McDowell v. Colvin*, No. 11-CV-1132, 2013 WL 1337152, at *4-5 (N.D.N.Y. Mar. 11, 2013) (finding that the ALJ was not required to order a consultative intelligence exam because evidence that the plaintiff had obtained a home health aide certificate and worked part-time for more than three years constituted evidence that the plaintiff had the intellectual capacity to

perform basic work activities). Ultimately, there is substantial evidence to support the ALJ's conclusion that plaintiff failed to demonstrate that he experiences disabling limitations in his ability to function as a result of his intellectual impairment.

Lastly, Plaintiff's argument that the ALJ erred in failing to develop the record by obtaining Plaintiff's education records to assess whether Plaintiff met Listing 12.05 is not availing. (Dkt. No. 9 at 3 [Pl.'s Mem. of Law]). These education records, even if made a part of the record, would not require a contrary finding. Plaintiff's reporting of his activities of daily living consistently show that he does not have the deficits in adaptive functioning necessary to require a finding that he is medically disabled as a result of his intellectual disability. In notable contrast to Plaintiff's arguments otherwise, the ALJ never concluded that plaintiff failed to demonstrate the presence of an intellectual disability before he reached age 22. This renders moot the reasoning behind plaintiff's arguments regarding the necessity of these records. (*Id.* at 5). As the record before the ALJ was sufficient to determine that Plaintiff did not meet Listing 12.05, there was no failure to develop the record necessitating remand, even considering the ALJ's heightened duty to develop the record due to plaintiff's pro se status at the hearing. *See Krach v. Comm'r of Soc. Sec.*, No. 3:13-CV-1089, 2014 WL 5290368, at *8 (N.D.N.Y. Oct. 15, 2014) (noting that an ALJ is under a heightened duty to ensure the record is fully developed when the claimant is unrepresented at the hearing). Further, these education records are not necessary for determining RFC given the wealth of medical opinion evidence which indicate that Plaintiff's mental and intellectual impairments did not, even in combination, impose disabling functional limitations during the relevant time period. Indeed, there is also an absence of any clear gap in the record that would have prevented the ALJ from accurately and fairly assessing Plaintiff's claim. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) ("Where there are no

obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.") (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)); *Janes v. Colvin*, No. 6:15-CV-1518, 2017 WL 972110, at *3 (N.D.N.Y. Mar. 10, 2017) ("Generally, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques.") (citing 20 C.F.R. § 404.1520b; *Rosa*, 168 F.3d at 80; *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)). Consequently, this argument does not provide an alternative basis for remand.

For all of the above reasons, the ALJ's finding that Plaintiff did not meet or equal Listing 12.05 is supported by substantial evidence, and remand is not warranted.

## IV.  CONCLUSION

**ACCORDINGLY**, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **<u>GRANTED</u>**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on the parties in accordance with local rules.

**IT IS SO ORDERED**.

Dated: June 14, 2017
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge